ELAINE W. GULACK *v.* FAY H. GULACK ET AL.
(10854)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued November 4, 1992—decision released February 16, 1993

*Michael J. Mannion,* for the appellant-appellee (named defendant).

*Paul L. Bollo,* for the appellee-appellant (plaintiff).

DUPONT, C. J. The defendant Fay H. Gulack appeals from the judgment of the trial court imposing a con-

structive trust on certain real property in favor of the plaintiff, Elaine W. Gulack. The issues on appeal are (1) whether the allegations of the complaint and the evidence submitted support the relief granted, (2) whether the trial court improperly drew an adverse inference against the defendant for failing to call the codefendant Howard Gulack[1] as a witness, and (3) whether the trial court misapplied the dead man's statute, General Statutes § 52-172, when it admitted statements of George Gulack, a deceased person. The plaintiff has cross appealed, claiming that the trial court improperly awarded to the defendant the fair market value of an addition to a house on the subject land.

The trial court found certain facts. In 1976, Max Gulack,[2] the uncle of the plaintiff's husband, paid all of the consideration for real property located at 21 Dick Finn Road in New Fairfield, but caused the title to the property to be placed in the name of his brother, George Gulack, the father-in-law of the plaintiff. The deed was recorded on the land records of New Fairfield. At the time of purchase, Max declared that he bought the property for the plaintiff and her husband, Howard, for use as their marital residence. Title to the property was placed in the name of George because Max felt that Howard was unstable and irresponsible. Max was also concerned about placing the property in Howard's name because Howard had a "propensity for litigation." The plaintiff has lived on this property since it was purchased in 1976. In 1978, George and the defendant, who was George's wife and the mother-in-law of the plaintiff, moved in with the plaintiff and Howard.

---

[1] The defendant Howard Gulack, the plaintiff's former husband, did not appeal from the judgment for the plaintiff. We will refer in this opinion to Fay Gulack as the defendant.

[2] There are five primary parties with the same last name involved in this appeal. After the initial reference, each party will be referred to by first name.

The defendant and George then built an addition to the existing house and lived there until 1983, at which time they moved permanently to Florida. George died in Florida on July 28, 1987. Max died eleven months later on June 8, 1988. From 1976 until his death, Max paid all of the taxes and insurance on the property, and took the appropriate tax deductions. No rent was ever paid to Max. Max bequeathed $175,000 each to the plaintiff and Howard, which they received upon his death. On July 29, 1988, by a certificate of devise, the property was transferred from George's estate to the defendant and recorded on the land records of New Fairfield. After that date, the defendant paid the taxes and insurance while the plaintiff provided for most of the maintenance and upkeep. The plaintiff continued to live in the house after the deaths of both George and Max.

In 1989, Howard began selling furniture from the house and told the plaintiff that the house would be sold. Thereafter, the plaintiff commenced a divorce proceeding against Howard. Howard left the house and moved to Florida in January, 1990. In February, 1990, the defendant instituted eviction proceedings against the plaintiff. The plaintiff then commenced this action seeking the enforcement of a constructive trust and a transfer of title to the plaintiff and Howard. The trial court imposed a constructive trust on the property in favor of the plaintiff and Howard, but ordered that the plaintiff pay to the defendant the fair market value of the addition.[3]

---

[3] The trial court concluded that the addition was "the sole property of Fay and the value thereof is to be subtracted from the fair market value of the whole and paid over to her." We interpret this language as meaning that a dollar value is to be given to Fay, rather than meaning that Fay is to be given any interest in the real estate. The addition to the house became part of the parcel of real estate and merged into the title. See *Ward v. Ives,* 91 Conn. 12, 21–22, 98 A. 337 (1916).

## I

The defendant first claims that the plaintiff's complaint and prayer for relief were fatally deficient. Specifically, the defendant claims that the plaintiff's complaint failed to allege either a duty owed or a special or confidential relationship, an essential element necessary for establishment of a constructive trust. Additionally, the defendant claims that the prayer for relief sought enforcement of a constructive trust without first requesting that the court impose a constructive trust.

The plaintiff argues, however, that, even though the complaint did not specifically request that the court impose a constructive trust, the complaint complied with the requirements of the rules of practice. Practice Book § 131 requires that a complaint "contain a concise statement of the facts constituting the cause of action and, on a separate page . . . a demand for relief . . . ." The plaintiff asserts that the complaint contained specific facts that alleged the existence of a constructive trust in favor of the plaintiff and a demand for relief in the form of enforcement of the constructive trust.[4]

We need not determine whether the complaint was sufficient to allege a cause of action for a constructive trust because the defendant waived such a claim. A pleading defect is waived when the case is contested on its merits without questioning such defect. *Tedesco* v. *Stamford,* 215 Conn. 450, 457, 576 A.2d 1273 (1990); see *Carnese* v. *Middleton,* 27 Conn. App. 530, 537, 608 A.2d 700 (1992). The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial. Practice Book § 152. If a motion

---

[4] The prayer for relief also included a request for a partition of the property as a result of the complaint for divorce. This request was withdrawn.

to strike is not made, "[t]he absence of a requisite allegation in a complaint that would have justified the granting of a motion to strike . . . is not a sufficient basis for vacating a judgment unless the pleading defect has resulted in prejudice." *Tedesco* v. *Stamford,* supra. " 'The appeal process should not be utilized to seek to correct pleading deficiencies the party complaining clearly could have remedied under our rules in the trial court.' " Id., 458, quoting *Fuessenich* v. *DiNardo,* 195 Conn. 144, 149, 487 A.2d 514 (1985). The defendant did not make a motion to strike the pleading and contested the case on its merits. The defendant first raised a challenge to the legal sufficiency of the complaint on appeal. Accordingly, unless the defendant was materially prejudiced by the alleged pleading defect, the defendant has waived her right to contest the alleged defect.[5]

After reviewing the record, we conclude that the defendant was not materially prejudiced. The case was tried on the theory that a constructive trust was created and, therefore, should be imposed or enforced. The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. A constructive trust is created by operation of law when these elements are present. The plaintiff set forth and argued the facts and elements necessary for the creation of a constructive trust, as well as the enforcement of one, and the defendant challenged the evidence, and the existence

---

[5] The complaint is entitled "Enforcement of Constructive Trust" and alleges that George Gulack received the conveyance in trust for Elaine and Howard Gulack, and that Fay Gulack holds the property in constructive trust for Elaine and Howard Gulack.

of the elements necessary for the creation and enforcement of a constructive trust.

The defendant also claims that the trial court incorrectly focused on the wrong parties in finding a special or confidential relationship between the parties as a condition precedent to the imposition of a constructive trust. The defendant asserts that the relationship that must exist for the creation or imposition of a constructive trust must be between the transferor and the transferee of the property in question, not the transferor and the beneficiary as found by the trial court. We agree that the special or confidential relationship must be between the transferor and the transferee, but conclude that despite the trial court's focus on the transferor and the beneficiary in its decision, the record and the facts found by the trial court support the existence of such a relationship between the transferor (Max) and the transferee (George).

Where a transfer of real property is made to one person and the purchase price is paid by another as an intended gift to a third person, the statute of frauds requires that the creation of the trust must be in writing. 2 Restatement (Second), Trusts § 453. There is, however, an exception to the requirement of a writing. "Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if . . . the transferee at the time of the transfer was in a confidential relation to the transferor . . . ." Restatement, Restitution § 183. A constructive trust is an equitable remedy imposed to prevent unjust enrichment. " 'Thus, a constructive trust arises where a person who holds title to property

is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' " *Filosi* v. *Hawkins,* 1 Conn. App. 634, 639, 474 A.2d 1261 (1984); see also *Cohen* v. *Cohen,* 182 Conn. 193, 203, 438 A.2d 55 (1980).

Before a trial court finds that a constructive trust exists and should be imposed, the court must find that a confidential relationship existed between the transferor and the transferee at the time of transfer of the property. *Starzec* v. *Kida,* 183 Conn. 41, 438 A.2d 1157 (1981); *Filosi* v. *Hawkins,* supra; *Downey* v. *Downey,* 1 Conn. App. 489, 472 A.2d 1296 (1984); Restatement, Restitution § 183. The confidential or special relationship must be of a nature that generates a " 'natural inclination to repose great confidence and trust.' " *Filosi* v. *Hawkins,* supra, quoting *Cohen* v. *Cohen,* supra. "A confidential relation exists not only where there is a fiduciary relation . . . but also where, because of family relationship . . . the transferor . . . is justified in placing confidence in the belief that the transferee will act in the interest of the transferor." Restatement, Restitution § 182, comment c. "Where the owner of land transfers it inter vivos to another in trust for a third person, but no memorandum properly evidencing the intention to create a trust is signed, the transferee will be compelled to hold the land upon a constructive trust for the third person, if the transferee at the time of the transfer was in a confidential relation to the transferor. This is true even though at the time of the transfer the transferee intended to perform the oral trust, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer. In such a situation a wrong is committed not merely against the transferor but also against the third person; and a court of equity will specifically redress the

wrong by putting the parties in the position in which they would have been if the wrong had not been committed." 1 Restatement (Second), Trusts § 45, comment c.

In the present case, the record reveals that such a confidential relationship did exist between Max and George. The trial court could reasonably have found certain facts. The Gulacks were a close-knit family. Max and George were brothers who were closely involved with each other's businesses and personal activities and they often discussed their personal and financial circumstances. When the plaintiff indicated that she wanted to purchase a house, Max, George and Fay, as well as Elaine and Howard, looked for a house. When Max bought the subject property in this case, Max insisted on putting the title to the property in George's name rather than in Elaine's and Howard's because he trusted that George would hold the property safely for Elaine and Howard. Max was confident that George would eventually fulfill Max's intention that Elaine and Howard own the property. Because of the great confidence and trust Max placed in George, we conclude that the trial court could reasonably have found that a confidential relationship, of the nature necessary for the imposition of a constructive trust, did exist between Max and George.

To conclude that a constructive trust exists, the trial court must find, in addition to the existence of a confidential relationship, that unjust enrichment of the party holding title would occur if the trust were not imposed. *Filosi* v. *Hawkins,* supra; *CBS Surgical Group* v. *Holt,* 37 Conn. Sup. 555, 558–59, 426 A.2d 819 (1981). We conclude that such unjust enrichment would occur. Title to the property was transferred to the defendant in 1988 after George's death in 1987. Prior to George's death and until Max's death in 1988, Max paid all of the taxes and insurance on the property. If the defend-

ant is allowed to retain title to the property, which was the subject of the conveyance to George, she would be unjustly enriched. The trial court properly found that a constructive trust existed and should be imposed.

## II

The defendant next claims that the trial court improperly drew an adverse inference against her for failing to call her son and codefendant, Howard, as a witness to corroborate her testimony that Max owed George "many, many, many, many dollars." The defendant claims that Howard was not a witness whom she would naturally produce. We agree that the court should not have drawn an adverse inference, but we conclude that the drawing of the inference did not affect the outcome of the case.

It is well settled that a trial court is permitted to draw an adverse inference from a party's failure to call an available and presumably favorable witness. *Hall* v. *Burns,* 213 Conn. 446, 469, 569 A.2d 10 (1990); *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). Under *Secondino,* two requirements must be satisfied: (1) The witness must be available; and (2) the witness must be one whom the party would naturally produce. *Secondino* v. *New Haven Gas Co.,* supra. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." Id.

The first requirement is not disputed by the parties since Howard was present in the courtroom throughout the trial and was therefore available. The second requirement, however, has not been met; Howard was not a party whom the defendant would naturally have produced. Howard was a codefendant. The plaintiff

originally sought partition of the property as a result of her divorce action against Howard as one of her claims for relief, but subsequently withdrew her prayer for partition. Howard then stood in the same shoes as the plaintiff because she sought only a transfer of the property to her and Howard, and there was no claim for relief adverse to Howard. Howard may have eventually received the entire property upon his mother's death, or conveyance to him, if she prevailed in the present suit. Howard, however, stood to acquire one half of the property outright if the plaintiff won. Howard's interests were, therefore, adverse to those of his mother. In addition, any knowledge that Howard may have possessed in regard to any debts owed by Max to George was not peculiar or superior to that of the defendant. The defendant was in a much better position to be knowledgeable about her husband's business dealings with Max. Therefore, Howard was not a witness whom the defendant would naturally produce, and the trial court should not have drawn an adverse inference against the defendant.

To require reversal, however, the court's misapplication of *Secondino* must be harmful. *Doran* v. *Wolk,* 170 Conn. 226, 231, 365 A.2d 1190 (1976). Any adverse inference arising from Howard's failure to testify did not play a role in the trial court's determination that a constructive trust existed. The trial court found the defendant's testimony, especially about alleged debts owed by Max to George, totally "incredible" and "unworthy of belief" by itself. The adverse inference drawn by the trial court against the defendant, therefore, served only to reinforce the trial court's view of the defendant's testimony.

### III

The defendant next claims that the trial court misapplied General Statutes § 52-172, the dead man's stat-

ute, which provides in relevant part: "In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence." The court admitted George's statements concerning the reasons for the purchase of the property, why legal title was placed in George's name instead of Elaine's and Howard's, and the intent of Max and George that title to the property would eventually be transferred to Elaine and Howard. The defendant claims that George's statements were not admissible because the defendant was sued in her individual capacity, and not as a representative of George, as required by the statute, and because the suit did not attach the title to the property owned by the decedent.

The defendant claims that case law interpreting the statute limits its application to suits that attach the title to property owned by the deceased. In fact, the suit does precisely that. It seeks the enforcement of "a constructive trust which was held by" George, and then by the defendant.

Even if this suit did not attach the title of George, General Statutes § 52-172 is not limited to suits that attach the title to property owned by deceased persons. In fact, "[t]he statute has no reference at all to the kind of property to be recovered, or the subject matter of the suit, but simply to the relation of the parties (or one of them) to the deceased." *Pixley* v. *Eddy,* 56 Conn. 336, 338–39, 15 A. 758 (1888). Thus, the only issue in determining whether General Statutes § 52-172 applies here is whether the defendant is a "representative" and whether the statements were relevant within the meaning of the statute.

The term "representatives of deceased persons" has long been interpreted by our Supreme Court to include persons who take some portion of the deceased's estate

either as a devisee or heir, as well as a personal representative, such as an executor or an administrator. *Bowne* v. *Ide*, 109 Conn. 307, 311, 147 A. 4 (1929); *Pixley* v. *Eddy*, supra, 340; *Lockwood* v. *Lockwood*, 56 Conn. 106, 110, 14 A. 293 (1887). Because Fay took title to the property as a devisee of George, she fits the term "representative" as used in the statute. The statements were relevant to the matter in issue because they related to whether a constructive trust existed and should be enforced. The trial court correctly admitted George's statements under the dead man's statute.

## IV

The plaintiff, in her cross appeal, contends that the trial court improperly awarded to the defendant the fair market value of the addition to the house. Usually, "a building or other structure voluntarily and without contract erected by one person upon land of another, becomes thereby annexed to the soil and a part of the realty"; *Ward* v. *Ives*, 91 Conn. 12, 21, 98 A. 337 (1916); and, in the absence of an agreement, buildings placed on land become a part of the freehold estate. *Rayhol Co.* v. *Holland*, 110 Conn. 516, 522, 148 A. 358 (1930). Because the house and the realty on which it stood was determined by the court to belong to the plaintiff, the addition became part of the realty to which the plaintiff was entitled as a result of the imposition of the constructive trust.

In an equitable proceeding, however, a trial court may consider all relevant circumstances to ensure that complete justice is done. This balancing of the equities is a matter for the discretion of the court, and, in reviewing such discretion on appeal, every reasonable presumption is given in favor of its correctness. *Reynolds* v. *Ramos*, 188 Conn. 316, 320–21, 449 A.2d 182 (1982). The court may even reduce the amount of indebtedness stated in a mortgage note under special

circumstances. Id., 320; *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980). We hold that a court may also determine that a structure voluntarily placed on the land of another may be the subject of compensation to the person constructing it, in an equitable action, if the circumstances warrant it. See *Ward* v. *Ives,* supra, 22. The circumstances warrant such a result if a manifest injustice would otherwise be done. See *Reynolds* v. *Ramos,* supra, 321. We conclude that the trial court was correct in its determination that the defendant should obtain compensation for the erection of the addition by her and her husband on the land determined to belong to the plaintiff and Howard.

The question remains, however, what is the measure of those damages. The trial court concluded that the measure of the damages was the fair market value of the addition, without deciding as of what date, or establishing the particular amount. We conclude, as a matter of law, that, although the defendant is entitled to damages, the damages should be limited to the cost of constructing the addition. We so conclude on the basis of existing Connecticut case law.

The plaintiff's suit put her in the position she would have been in had the constructive trust not been violated. The establishment of a constructive trust need not penalize the defendant as a wrongdoer. *Bowen* v. *Morgillo,* 128 Conn. 442, 446, 23 A.2d 719 (1941). The defendant's right to compensation is similar to the equitable principles involved in a preclusion of unjust enrichment. Id., 446–47. "A person is entitled to specific restitution of property from another or to the product of such property only on condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit, to the extent that justice between the parties requires." Restatement, Restitution § 158.

The cost to construct the addition is the measure of damages due the defendant. See *Bowen* v. *Morgillo,* supra; see also *Stichting Mayflower* v. *Newpark Resources,* 917 F.2d 1239, 1244 (10th Cir. 1990); *Edwards* v. *Hauff,* 140 Ariz. 373, 377, 682 P.2d 1 (1989); *Farnum* v. *Silvano,* 27 Mass. App. Ct. 536, 540 N.E.2d 202 (1987). The benefit deriving from the addition due to the rising value of real estate, if any, belongs more properly to the beneficiaries of the constructive trust, the plaintiff and Howard, than to the defendant, who should have enforced the constructive trust. See *Kakalik* v. *Bernardo,* 184 Conn. 386, 396, 439 A.2d 1016 (1981).

V

Although the court imposed a constructive trust, it did not, as requested in the plaintiff's prayer for relief, order a conveyance, in accordance with the trust found, to Howard and the plaintiff. The complaint refers to the volume and page of the land records of the town of New Fairfield in which the deed to George was recorded, and to the volume and page in which the defendant received title from the estate of George. No deed was submitted into evidence as an exhibit. The court clearly intended that title pass to the plaintiff and Howard, and had the power to pass the title to the real property by its decree. See General Statutes § 52-22.

The judgment imposing a constructive trust is affirmed. The case is remanded with direction to render judgment passing title to Elaine Gulack and Howard Gulack, as tenants in common, to property known as 21 Dick Finn Road, New Fairfield, Connecticut, as more particularly described in volume 124, page 90 and volume 187, page 1007 of the land records. The judgment is reversed as to the award of the value of the addition to the defendant Fay Gulack and the case is remanded for further proceedings to determine the cost of the

addition to 21 Dick Finn Road, and with direction to render judgment awarding such amount to the defendant Fay Gulack.

In this opinion the other judges concurred.